IN THE CIRCUIT COURT OF THE **FOURTH** JUDICIAL CIRCUIT
IN AND FOR **DUVAL** COUNTY, FLORIDA

**Case No. 2022 CA 3522**

**The Williams Family, including Birth Parents
Taniyah Crutch-Williams and Rodney Williams ,
Jr.,  individually and on behalf of their Minor
Child,** ███████ **and Charlotte Williams and Rodney
Williams, Sr., individually and as legal parents
of Minor Child** ████████████████

Plaintiffs

v.

**Jury
Trial
Requested**

**Kids First of Florida, Inc.
a Florida corporation,,**

 Defendant/

### Plaintiffs' Amended Complaint for Damages

The Plaintiff Williams Family Members [Birth Parents
Taniyah Crutch-Williams and Rodney Williams, Jr., individually
and on behalf of their Minor Child, ██████ and Paternal
Grandparents Charlotte Williams and Rodney Williams, Sr.,
individually and as legal parents of Minor ████████, sue
Defendant Kids First of Florida, Inc. a Florida corporation
**[KFF],** and further allege:

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 10/06/2022 02:20:33 PM

## THE ACTION

This is an action for damages in excess of $30,000.00 exclusive of interest, costs and attorney's fees, and other relief within the jurisdiction of the Court.

### Overview of the Case

1. This civil action for damages results from the Defendant's repeated and continuing tortious interference with the constitutionally protected relationships between the Plaintiff Family members and their children, and continuing interference with the Plaintiffs' rights to their records and related information.

2. The Defendant's misconduct includes misuse of the foster care system for, among other things, the improper internal diversion of the Plaintiff Birth Parents' daughter ███████ and the attempted diversion of ███████ and ███████ away from Williams Family members to system-connected nonrelatives, in this case the couple known here by the pseudonyms Jocelyn and Karl Frain.

3. Among other things, Jocelyn and Karl Frain have served as foster parents since approximately 2013 by Defendant KFF. They also established a close relationship with Defendant KFF as mentors for KFF's other licensed foster parents, and Karl Frain served as a fiduciary for KFF during the several years he was a member of the KFF board of directors and a trustee of the KFF foundation.

4. The Defendant KFF-connected Frains are White; the Plaintiff Williams Family members are African American.

5. The Frains do not have, and have never had, any biological connection with any of the Plaintiff Family members and their children. The state conflict of interest policy precluded their even being considered as foster parents, let alone as adoptive parents. The Frains were not eligible to serve in either capacity and should never have been found qualified to serve as even temporary custodians for any foster children whose cases were being handled by KFF. Given the preclusive conflict of interest, the KFF-connected Frains should especially never have been chosen to serve as caregivers for any of the Williams children, given the different culture and ethnic backgrounds, the Frains' nonrelative status and the availability of multiple Williams Family relatives suitable to serve as temporary and permanent caregivers of ███████, ███████ and ███████ if the need for caregivers arose.

6. The improper actions of Defendant KFF began in late August or early September 2017 and continued thereafter over the intervening years, including actions the Defendant has taken, directly or indirectly as recently as September 2022, acting through its representatives the Frains, in continuing efforts to interfere with the legal and constitutional rights of the Plaintiff Family members.

7. Defendant KFF's primary motive and intentions were to use its positions of privilege and power, and its special relationship with its representatives, the Frains, to accomplish the taking of the Plaintiffs' children from the Plaintiffs Family members and internally diverting them to the Frains.

8. . This action for damages arises from the Defendant lead agency KFF, through its staff, including the Frains, internally diverting ▒▒▒▒▒▒ from her family [the Williams Family] to the KFF-connected Frains, and the KFF staff, including the Frains, attempting on a number of occasions between August 30, 2017 and August 3, 2021 to also internally divert ▒▒▒▒▒▒, and ▒▒▒▒▒▒. from the Williams Family to the KFF director and his family, the Frains.

9. .This action also arises from KFF and those acting in concert with it from withholding key information from both the Williams Family and the dependency court, constituting a fraud on the court and multiple violations of the constitutionally and statutorily protected rights of the Williams Family to their records, fraud and misconduct that continues to this day.

### Parties

10. Plaintiffs Taniyah Crutch-Williams and Rodney Williams, Jr. are the birth parents of three children: ▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒ and ▒▒▒▒▒▒▒, all of whom are full biological siblings.

**11. Plaintiffs Charlotte Williams and Rodney Williams, Sr. are the paternal grandparents of the three children; they were approved to be the adoptive parents of both █████████ and ███████ and are the actual adoptive parents of ████████████**

12. At all times material, all of the Plaintiffs lived in the foster system catchment area where the Defendant KFF operated the foster system for the state of Florida.

13. At all times material, **KFF was the lead community based care provider** in the area pursuant to Fla. Stat. § 409.993, and contracted with the State of Florida Department of Children and Families [DCAF] to provide properly trained and certified social workers and case managers to administer lawful and proper foster care and related social work related services in Clay County, including case management services, adoption services, licensing of foster homes, in accordance with Chapters 409 and 39, Florida Statutes, Florida Administrative Code provisions, KFF's contract with DCAF, DCAF's and KFF's Operating Procedures, and applicable law.

14. At all times material, **KFF** was acting as an "adoption entity" as defined by Fla. Stat. § 63.032.

15. At all times material, **KFF** acted through its officers and directors and its certified social workers and case managers, and other staff.

16.  At all times material, **KFF** had a duty to make sure that its case handling social workers and case management staff and their supervisors acted as the professional social workers and case management staff they were expected to be, including complying with applicable laws, and were expected not to subvert the foster system for misuse in internally diverting children to nonrelatives or others who should not have them.

17. At all times material, Defendant **KFF**'s contract with DCAF obligated KFF to comply with Florida's public records laws, including those in Chapter 119, Florida Statutes.

18. Defendant **KFF** is separately obligated to provide children and their parents with a complete copy of their records created by Florida's executive branch and the private community partners, reflecting all actions taken by the lead agency in discharging its obligations relating to the social work and case handling of cases of children the state of Florida takes from their parents. See Fla. Stat. § 39.00145.

19. Because **KFF** has ignored its obligations to provide the Plaintiffs with the records requested, much more information exists to which the Plaintiffs are entitled but which KFF [and the Department] have not fully provided; that information is expected to be available soon and may be used to corroborate, prove and supplement the allegations here.

## Venue

20.   At all times material, Defendant KFF has been in business in northeast Florida, with its registered agent and several of the current and former members of its board of directors located in Jacksonville, Florida; so that venue is proper in Duval County, Florida.

## General Allegations – KFF Knowledge and Duty

21. At all times material, in its capacity as the contracted lead agency in its part of northeast Florida, Defendant KFF had a duty to properly operate the foster care system consistent with its obligations under state and federal law.

22. At all times material, Defendant KFF knew or should have known of its obligation to operate lawfully, knew or should have known that the system had the obligation to provide a case plan for any parents of a removed child, knew or should have known that in order to terminate the fundamental, constitutionally protected rights of birth parents to raise their children, the foster care system petitioner had the burden of proving - by clear and convincing evidence -  that the parents had abused or neglected children in a way that caused or contributed to harm of the children; parental rights to raise their children may not properly be terminated, or even interfered with, unless there is actual proof of abuse, neglect or abandonment. By law, parents rights cannot be terminated

because a child has a metabolic bone disorder that leads to unexplained fractures UNLESS the clear and convincing evidence proves that one or both parents did something wrong that caused the fractures.

23. At all times material, Defendant KFF knew that at the time of a shelter hearing, Florida and federal law prioritized the placing of children with relatives and knew, similarly, if parental rights were terminated, that children removed from their birth parents should be placed with relatives, not nonrelatives, because children placed with relatives have better outcomes than those placed with nonrelatives.

24. At all times material, KFF staff had a duty to perform a diligent search for relatives with whom removed children could be placed temporarily; that duty included notifying all relatives within 30 days of children being removed from their parents of the opportunity for those relatives serving as relative caregivers.

25. At all times material, KFF had a duty to gather all medical records and information relating to removed children, and to provide the information gathered to the Birth Parents and the court.

26. At all times material, KFF had a duty, if parental rights of birth parents were terminated, to update the diligent searches for

relatives able to serve as adoptive parents for the minor children whose parents' rights were terminated.

27. At all times material, KFF knew that internally diverting foster children from relatives to system-connected nonrelatives was contrary to law, and contrary to its obligations to the removed children and their families.

28. At all times material, KFF knew that withholding medical information pertinent to the removed children and about the conflict of interest posed by KFF social worker and case management staff handling a child's case in order to internally divert a child from a relative placement to non-relative system-connected foster parents was contrary to applicable standards of care and law, and was wrong.

29. At all times material, KFF knew its staff had a duty to children removed from their parents [and to the children's parents and other relatives] to comply with social work standards of care expected of its social workers and case management staff.

30. At all times material, KFF knew applicable standards of care for proper case handling staff included, among other things, removed siblings being placed together where possible and, where not possible, then making sure that a frequent enough visitation

schedule was in place that the siblings could maintain and strengthen the bonds between them.

31.At all times material, KFF knew applicable social work standards of care required that there be sufficient visitation between removed children and their birth parents and other relatives that the bond between the children and their parents and relatives be maintained and strengthened.

32. At all times material, KFF knew that parents of removed children were entitled to competent attorneys familiar with the dependency system, knew that those attorneys had a duty to provide proper representation to the birth parents from whom the children had been removed, and that it was contrary to applicable standards of care for a lead agency such as KFF or others working as foster system operators to coopt or attempt to coopt the parents' attorneys through payments of money or other benefits.

33. At all times material, Defendant KFF had a duty to make sure that its staff handled cases consistently with applicable Operating Procedures, including its own and those of DCAF, as well as complying with applicable laws giving priority to the children's relatives over system-connected persons hoping to obtain children by the internal diversion of children away from relatives to system-connected personnel.

34. At all times material, KFF had a duty to make sure that its social workers and case handling personnel handled the cases consistently with applicable standards and controlling laws, and in a way that placed the best interest of the children and their families, ahead of the interests of their system-connected colleagues.

35. At all times material, Defendant KFF social workers and case handling personnel knew that the Frains, a system-connected licensed foster parent couple, had a special connection to KFF.

36. At all times material, Defendant KFF social workers and case handling personnel knew that one of the specially connected foster parent couples KFF had licensed as foster parents included a member of the KFF board of directors and also served KFF as a trustee of the KFF foundation, posing a clear conflict of interest between KFF's self dealing, and its duty to foster children and their biological and related family members to properly perform its professional social work and case management obligations for children and their relative family members impacted by the foster system.

## The Timeline for the Diversion

37. Beginning in August 2017, in conjunction with CPT personnel, KFF staff decided to use the hospital evaluation of ███████ health as the key to an internal diversion of ██████ and ████████

38. Between August 30, 2017 and August 3, 2021, KFF staff continuously pursued their internal diversion plan of the Williams children, including ██████████████████

39. In conjunction with the Department of Health [the state agency in which the CPT bureau was located], KFF arranged for ████████ to be separated from ████████ when she was discharged from the hospital [where her pediatrician had arranged for genetics testing based on his belief ████████ had a metabolic bone disorder], and ████████ was placed with a medical foster parent.

40. Thereafter, KFF staff coordinated the transfer in October 2017 of ████████ to Jocelyn and Karl Frain [pseudonyms to protect confidentiality].

41. Between that transfer and the time parental rights were terminated, the KFF staff blocked meaningful visits of Williams Family members with ████████, including the identified prospective adoptive parents Charlotte and Rodney Sr, and ████████

42. Throughout its handling of the Williams Family, with all three children, even after the internal diversion of ████████, KFF continued its efforts to help the Frains get ████████, on more than one occasion, including attempts in 2018 and 2019 through 2021.

43. **KFF never disclosed** to the Williams Family members [or the court] (1) the complete medical records of ████████ and ████████ ; (2) the complete genetics data results with the metabolic bone disease and other findings of the 2017 and 2018 genetics testing on ████████ for which the Williams Family members, and the dependency court, were waiting ; (3) the special relationship between the Frains and KFF; (4) the conflict of interest policy that made the Frains involvement in fostering or adopting any member of the Williams Family children improper and blatantly wrong; and (5) the extent to which KFF coopted the Williams Family attorney so that he and his staff were working to assist KFF and its staff, rather than his Williams Family Member clients.

44. After the TPR, and despite the recommendation that paternal grandparents Charlotte and Rodney Williams, Sr. should adopt both ████████ and ███████, KFF denied visits, and coerced and convinced the attorney for the Williams family to cooperate with KFF and its board member so the Frains could keep ███████, even though the Frains were not relatives, and were White, and even though the Williams Family members were African American and were relatives.

45. At some point in 2013, the Frains were apparently licensed as foster parents for KFF, and continued to be licensed foster parents at all times material.

46. In 2015-2016, KFF recognized its foster parent mentors the Frains as its foster parents of the year; Karl Frain had been, and continued after that, to be on the KFF board, and to sign various legal papers as a trustee for KFF.

47. At all times material, KFF knew or should have known the standard of care applicable to its social workers and case management staff required placing children with members of their same family and relative group and with those sharing the child's same cultural background.

48. Beginning in or around 2015,  Karl Frain. began serving as a member of the KFF board of directors and as a trustee of the KFF foundation.

49. In or around 2016, KFF knew that its licensed foster parent Karl Frain, who also served as a member of its Board of Directors and as a trustee of its Foundation, and his wife Jocelyn Frain wanted to adopt one or more children.

 50. By the end of May, 2017, the Birth Parent Plaintiffs had two children: ███████ born in ███████ and ███████ born in ███████.

51. At all times, the Birth Parents carefully watched over their children, under the guidance of their pediatrician, and did not

abuse either of their children ███████ or ███████, nor did they ever abuse their child ███████

52. In August 2017, the Birth Mother was concerned that ███████ started holding her left leg differently. The pediatrician advised the Parents he thought ███████ had a bone disease, and ordered genetic tests, with ███████ in the hospital for those tests.

53. Unknown to the Williams Family, KFF coordinated with other members of the foster system, including CPT members who monitored hospitals to watch for possibly abused children who could be internally diverted away from their families to system-connected foster parents.

54. While ███████ was in the hospital with her bone disease being assessed, a CPT member learned about ███████ presence, and improperly started the process of working with KFF to remove █ ███████ and ███████ from the Birth Parents so they could be directed into the foster system internal diversion program, a type of unlawful child trafficking program.

55. At the detention hearing on the shelter petition, Defendant KFF was officially assigned the case handling, and began the process of internally diverting the then-three-month old ███████ to its board member/trustee and his wife, completely contrary to law.

56. Throughout the dependency case process, KFF staff mishandled the case in numerous ways; its withholding of the requested documents is apparently intended to help KFF and its board member get away with the child snatching/diversion of ████████, all the while withholding from the Williams Family members and the dependency judge the fact KFF was handling the case contrary to law and to the obligations owed to ████████ and ████████ family.

57. At all times material, Defendant KFF staff complied with the desire of the board member/trustee, and mishandled the case relating to the Plaintiff Family, so as to improperly accomplish the internal diversion of ████████ to the Frains, essentially taking direction and orders from the Frains as if they were senior social workers on the case.

58. On at least three occasions after helping its board member and his wife get foster custody of ████████ KFF staff also tried to divert take ████████ to the Frains.

59. On at least one occasion after the birth of the Birth Parents' third child in ████████, KFF staff also attempted to illegally divert ████████ from the Birth Parents to the Frains.

60. During KFF's handling of the dependency case relating to ████████ and ████████, KFF ignored state and federal law requiring

relative placements for ████████ and ████████ and handled the children's dependency case in a way to divert the two children to KFF's board member/trustee and his spouse.

61. During KFF's handling of the dependency case relating to ████ ████ and ████████ KFF withheld mandatory information from the dependency judge and the Williams Family, provided untruthful information about the Williams Family members, and improperly interfered with the Williams' Family's pediatrician.

62. During KFF's handling of the dependency case relating to ████ ████ and ████████, KFF blocked access of the Williams Family members to information to which they were entitled; KFF is still continuing the blocking of information access to which the Plaintiff Family members are entitled.

63. During KFF's handling of the Williams Family case, KFF staff improperly blocked sibling visits between ████████ and ████████

64. During KFF's handling of the Williams Family case, KFF improperly blocked visits between ████████ and ████████

65. During KFF's handling of the adoptions cases of ████████ and ████ KFF staff undermined the AARC decision recommending the Paternal Grandparents to be the adoptive parents of both children; the undermining included disallowing of visits, misuse of

threats to convince Charlotte Williams and Rodney Williams Sr that, if they did not allow the Frains to "keep" ████████ the foster system officials would try to divert ████████ away from them, and arranging for secret payments to the attorney the Adoptive Parents had arranged to represent them, so that the attorney would assist in the undermining of the grandparents' approved adoption for both of children, ████████████████████████

66. After KFF and the Williams Family's "double agent" attorney coerced and convinced the paternal grandparents they should protect ████████ for whom they had been serving as a relative caregiver, and let the Frains adopt ████████ KFF through its staff, including the Frains, continued their efforts to internally divert ███ ████████ away from his Adoptive Parents, the paternal grandparents.

67. During KFF's handling of the dependency case relating to ████████ ████████ and ████████ KFF also improperly used the Plaintiff Birth Mother's health insurance to try to extract more than $60,000 relating to testing and inappropriate apparent experimentation and treatment to which KFF and its staff, including the Frains sec on ████████.

## Count I-A: Birth Parents' Claim
## of Negligence against KFF

68. Plaintiffs Birth Parents reallege paragraphs 1 through 67 and further state:

69. Defendant KFF owed the following statutory, contractual and common law duties to the Birth Parents:

    a. To use reasonable care to properly operate the foster system;

    b.  To provide social work and case handling practices in a manner consistent with applicable professional standards of care;

    c. To ensure that its staff did not improperly internally divert children away from their relatives and biological family members to system-connected favorites who wanted other people's children;

    d. To make sure that children and their families were provided notice and the opportunity to be heard at all hearings, and were not treated as second class citizens;

    e. To arrange for siblings to be placed together with relatives where possible and, where not possible, to make sure each child was placed with a relative, with sufficient sibling visits to maintain and strengthen the bond between the siblings;

    f. To make sure that the children's relatives were notified promptly of their right to serve as relative caregivers for minor children relatives removed from their parents;

    g. To not hide significant information from the children's Family or from the dependency court; and

    h. To refrain from misusing the foster system to accomplish improper outcomes, such as the internal diversion of children to its staff.

70. Defendant KFF breached these duties in that:

a. It did not disclose the relationship between the Frains and itself, not to the Williams Family members and not to the court, and it never disclosed the conflict of interest policies that prohibited its staff, including the Frains, from serving as foster or adoptive parents of children for whom KFF was providing foster and adoptive case handling services;

b. It withheld key genetics test result and other important information from the Williams Family members and the dependency court, despite the fact it knew the test results confirmed the belief of pediatrician Wallizada that ███████ had a metabolic bone disorder that provided a scientific explanation for her "unexplained" fractures, and was inconsistent with claims of the foster system operators that some abuse of ██████ caused her fractures;

c. It improperly did not place ██████ and ███████ with available relatives and family members, and did not provide the required notices to the children's family members about their right to serve as relative caregivers;

d. It improperly allowed its ineligible, conflicted staff to foster and adopt, as fictive kin, children in foster care, even though it knew or should have known there were actual relatives available with whom the children should have been placed, knowing this constituted unlawful internal diversion of children;

e. It handled the case of ███████ and ██████ by unlawfully and improperly allowing a medical condition to be a reason for taking children from Birth Parents even though there was no evidence of abuse of either child by either Birth Parent;

f. It did not properly separate ██████ and ███████ then improperly compounded the harm to them by not providing sufficient visitation;

g. It tried to cover up its numerous misdeeds and wrongful acts by not providing the records and information to which the Birth Parents and other Family members were entitled;

h. It compounded the situation, adding insult to injury, by allowing its staff to arrange for experimentation, testing and treatment of ███████ without obtaining the Birth Parents' consent or approval from the court at a properly noticed hearing, then tried to get reimbursement for the costs through the Birth Parents' insurance, while claiming there was nothing medically wrong with ████████ and while the Frains arranged more than $60,000 in bills for secret medical care and treatment.

i. It knew, from at least December 2017 that the genetics test results showed that ██████ had a metabolic bone disease consistent with her fractures, yet withheld and NEVER filed the results, knowing that the judge had already ruled any TPR would be reheard upon receipt of the test results. [It took the Williams Family until 2022 to obtain the test results from the lab, despite the fact KFF had access to them no later than 2017 for the first test results and 2018 for the second round of genetics tests; it was the undersigned Williams Family attorneys in 2022 who filed the 2017 results with the dependency court, not KFF].

71. Defendant KFF's breaches were a proximate cause of injury and damage to the Birth Parents, devastating them, with their children taken from them because the KFF personnel wanted them, not because there was any abuse, compounding the devastation by separating the two children from each other, and not only denying ██████ the opportunity to grow up with her family, but by giving ██████ to the KFF-connected White Frains, just as if the child were on a plantation prior to Emancipation in May 1865, and as if

she were a second class citizen, and her birth ethnicity and heritage were of no consequence.

72. KFF's non-disclosures of key information and the subsequent blocking of the extent of the fraud perpetrated here by KFF's internal diversion scheme and its noncompliance with laws and other standards KFF was obligated to adhere to, plus KFF's mislabeling of nonrelative, system-connected adoptive applicants as "fictive kin" exacerbated and compounded the very personal harm and damages the Birth Plaintiffs suffered.

73. Each of the Plaintiff Birth Parents suffered damages caused or contributed to by KFF's breaches of duty, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, loss of their constitutionally protected associational rights with ██████ and ██████ their right to be free from unlawful interference with their familial relationships, loss of earnings, loss of ability to earn money, interference with their legally protected rights to information and constitutional rights including due process and equal protection, and the loss of ██████ and ██████ from their nuclear family in the past, with the wrongful separations expected to continue into the future, and the interference with their rights still continuing.

WHEREFORE Plaintiff Birth Parents demand trial by jury of all issues so triable as of right, and demand the entry of judgement against KFF for their damages, and such further relief as the Court deems appropriate.

## Count I-B: Claim of Birth Parents for Tortious Interference with Constitutionally Protected Rights and Familial Relationships

74. As an alternative to Count I-A, Plaintiff Birth Parents reallege paragraphs 1 through 67, and further allege:

75. KFF's handling of ██████████ and ██████████ case was an intentional effort to divert the children from the Birth Parents custody, as was its effort to internally divert ████████ away from the Birth Parents, using the same known-to be-false statements in 2021 as had been used previously in the ██████████ and ██████████ case.

76. KFF's conduct was willful and knowingly invaded the Birth Parents' rights to parent ██████████ and ████████ without government interference.

77. At all times material, lead agency KFF had a duty to comply with federal and Florida laws regarding the temporary and permanent placement of children taken into the foster system;

78. At all times material, KFF had a duty to avoid misuse of special relationships to use the foster system as a child diversion system, like a humane shelter where those wanting children could come and browse and pick the children they wanted, without regard to the law, or the fact that a large majority of the children in the system had relatives who could provide the forever homes the children might be in need of, and to avoid any conflict of interest between the personal desires of its staff, and to avoid any conflict between their desire for

self-dealing and the obligations duties KFF owed to the removed children, their relatives and other family members.

79. KFF's actions in ignoring the laws and standards, and in coopting the power and function of the foster care system to achieve the Frains desire to take ▮▮▮▮▮ after choosing her for themselves during a chance visit violate the prohibitions against kidnapping in Florida law, including but not limited to Fla. Stat. § 787.01, and against interfering with the parental/child relationships the Birth Parents properly had with ▮▮▮▮▮ and ▮▮▮▮▮

80. KFF failed to use reasonable care in complying with its duties and obligations, breaching their obligations, and compounded their transgressions by participating in the internal diversion scheme inherent in the foster care system as it is operated by internal diverters, but which is completely contrary to law.

81. KFF breached its obligations and the duties owed to the Plaintiff Birth Parents in numerous ways, including by:

(a) directing and allowing the lead agency staff and others working in the foster care system to withhold key evidence about ▮▮▮▮▮ bone disease and other health issues from the Plaintiff Family members and the dependency court judge;

(b) causing the withholding of information about the blatant conflicts of interest existing as a result of KFF allowing the Frains to serve as its staff directed case related decisions, to facilitate the Frains' desires, while ignoring those of the Birth Parents and their children, and while ignoring the blatant conflict of interest, and the law;

(c) intentionally causing the lead agency and others to keep ▮▮▮▮▮▮ from being placed with relatives at the shelter hearing and after the termination of the Birth Parents' fundamental rights to parent ▮▮▮▮▮▮ and ▮▮▮▮▮▮

(d) convincing the foster system operators to keep from the judge the information about the *Santosky v. Kramer,* 455 U.S. 745 (1982) burden of proof needed to terminate parents' rights to raise their children:

(e) preventing family placements for ▮▮▮▮▮▮, preventing sibling visitation with ▮▮▮▮▮▮ from being implemented or from being implemented to an extent appropriate to encourage bonding between ▮▮▮▮▮▮ and her biological family members;

(f) KFF allowing untruths about the maternal grandparents to preclude their consideration as relative caregivers, and not using the requisite due diligence to identify and notify all of the pertinent members of the Williams family;

(g) KFF allowing its staff to apply to adopt foster system children rather than complying with state and federal law giving priority to actual family and relatives, by allowing the nonrelative system-connected applicants to be misidentified as fictive kin;

(h) KFF staff convincing attorneys for the GAL to file an unfounded, improper motion to remove ▮▮▮▮▮▮ in 2018 from his custodial relative caregivers for the purpose of assisting the implementation of the unlawful plan to add ▮▮▮▮▮▮ to the Frains' collection of children improperly internally diverted from their actual kin;

(i) KFF allowing its staff to abuse their positions and to take over and direct the provision of extraordinary unapproved medical and experimental health care of ▮▮▮▮▮▮ at the expense of the Birth Mother's health insurer;

(j) KFF coordinating to cause the lead agency to file the 2019 dependency petition to try to separate ▮▮▮▮▮▮ from the relative caregivers who had become his Adoptive Parents;

(k) KFF and its staff [including the Frains and their attorney] abusing their positions to interject themselves into a hearing in ██ ███████ case trying to bully the dependency court into ordering ██ ██████ to be placed with the Frains while ██████████ adoptive parents completed their reunification case plan with their adoptive son;

l) KFF abused its fiduciary obligations by encouraging and assisting the taking of ████████ from the day care KFF had insisted on, and removing him to the Frains, with no court order permitting the child taking they were complicit in trying to take;

(m) KFF and its staff misusing their positions to convince the Department and GAL to enter ex parte orders in ████████ 2019 dependency case to keep his adoptive siblings [Plaintiffs Taniyah and Rodney Williams, Jr] from having visitation and contact with ████ ██████ and

(n) KFF and its staff misusing and abusing their positions to convince the foster system operators to file the 2021 dependency petition to allow them to take ██████ for themselves, using the known-to-be-false allegations from the 2017 fraudulent petition involving ██████ and ██████ all constitute improper interference with the Plaintiffs' custodial rights under Florida law, including Fla. Stat. §787.03 and violate the provisions against perjury in official proceedings in Fla. Stat. §§ 837.02, 837.021 and 837.06, among others.

82. As a result of Defendant KFF's breaches of duty and wrongful misuses of power and position, and its repeated wrongful interference with the Plaintiffs' constitutionally protected familial associational rights, each of the Plaintiff Birth Parents suffered harm, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, interference and loss of their constitutionally protected familial associational rights with ██████ the right to be

free from unlawful interference with their familial relationships, loss of earnings, loss of ability to earn money, and the interference and separation from ████████ and interference, separation and loss of ████████ from the family in the past, with the damages continuing in the future.

83. As a result of KFF's tortious interference with the Birth Parents' constitutionally protected and familial relationships, the Birth Parents suffered damages, including the expense of trying to remedy the injustice, the loss of ████████ from the Family, the loss of ████████ the right to be free from interference with protected associational rights, bodily injury and resulting pain and suffering, mental anguish, loss of capacity for the enjoyment of life.

WHEREFORE Plaintiff Birth Parents demand trial by jury of all issues so triable as of right, the entry of judgement against KFF, and such further relief as the Court deems appropriate.


**Count I-C: Birth Parents' and ████████ Claim against KFF for Intentional Infliction of Emotional Distress**

84. As a further alternative to Counts I-A and I-B, Plaintiff Birth Parents, on behalf of themselves and ████████ reallege paragraphs 1 through 67, and further allege:

85. KFF's conduct in implementing the internal diversion of ████████ and ████████ from the Birth Parents and the attempted internal diversion of ████████ was intentional or reckless.

86. KFF's conduct was outrageous.

87. KFF's conduct caused emotional distress to each of the Birth Parents beginning August 30, 2017 to the present, and to ███████ from his date of birth to the present.

88. One of the more egregious aspects of this entire years' long ordeal was the fact that, even though the foster system operators agreed to the August 3, 2021 dismissal of the dependency petition relating to ███████, and their recognition that the Birth Parents were safe parents, and implicit acknowledgement that ███████ fractures were due to her metabolic disorder and not parental abuse, KFF and their cohorts did not simultaneously step up and take action to set aside the fraudulently obtained, unsupported TPR judgement. Instead, KFF, including its staff members the Frains, as well as the GAL have seemingly increased their efforts to keep the records and information hidden.

89. Plaintiff Birth Parents and ███████ sustained severe emotional distress as a result of KFF's years' long unlawfully intrusive, internally diverting, discriminatory, rights-blocking conduct.

90.   Each of the Plaintiff Birth Parents suffered damages caused by KFF's intentional infliction of emotional distress, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, severe emotional distress, loss of capacity for the enjoyment of life, loss of their constitutionally protected parental rights and associational rights with ███████ and ███████, the right to be free from unlawful interference with their familial relationships, loss of earnings, loss of ability to earn money, and the loss of ███████

and ███████ from the family in the past, with the wrongful separations and intrusions on their constitutionally and legally protected rights expected to continue into the future.

91.Plaintiff ██████ suffered damages caused by KFF's breaches of duty, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, severe emotional distress, loss of capacity for the enjoyment of life, loss of and interference with his constitutionally protected associational rights with ██████ and ██████ damage to his right to be free from unlawful interference with his familial relationships and other constitutionally and legally protected rights, with the damages continuing into the future.

WHEREFORE Plaintiff Birth Parents Taniyah Williams and Rodney Williams, Jr. individually and on behalf of ██████ demand trial by jury of all issues so triable as of right, and demand the entry of judgement against KFF for the damages attributable to KFF, and such further relief as the Court deems appropriate.

## Count I1-A-██████ Claim of Negligence Against KFF

92. Acting by and through his Adoptive Parents, Plaintiff ██████ realleges paragraphs 1 through 67, and further alleges:

93.At all times material from August 30, 2017 through the present, KFF and its staff, had a duty as aforesaid to used reasonable care in discharging its lead agency obligations, and in providing the information and records requested.

94. At all times material, Defendant KFF participated and continues to participate in fraud on the dependency court, by:

    a. Never disclosing the inappropriate relationship between the Frains and KFF;

    b. Never disclosing its decision to internally divert ▮▮▮▮▮▮ to its staff members, the Frains, contrary to law;

    c. Never providing all of the medical records KFF and its staff gathered relating to ▮▮▮▮▮▮ and ▮▮▮▮▮▮;

    d. Hiding from the Williams Family members and the dependency court the genetics data test results on ▮▮▮▮▮▮ in 2017 and 2018, despite knowing the results confirmed ▮▮▮▮▮▮ suffered from a metabolic bone disorder which was the likely explanation of ▮▮▮▮▮▮ fractures, despite being aware there was no evidence of abuse of ▮▮▮▮▮▮ or ▮▮▮▮▮▮ by either Birth Parent, despite being aware there was no legal basis for termination of the Birth Parents' fundamental right to parent ▮▮▮▮▮▮ and ▮▮▮▮▮▮ and despite knowing the dependency court was prepared to rehear the TPR trial as soon as the genetics test results were available.

    e. Not allowing Williams Family members to be the caregivers for ▮▮▮▮▮▮ and ▮▮▮▮▮▮ in a way that would keep them together;

    f. Not providing the visitation for the siblings frequent enough to maintain and strengthen the sibling and familial bonds, shamefully providing only three sibling visits between ▮▮ ▮▮▮▮▮▮ and ▮▮▮▮▮▮ since August 30, 2017;

    g. Wrongly depriving ▮▮▮▮▮▮ of his Birth Parents, as parents, contrary to law

h. After the termination of parental rights, blocking the adoption of ███████████ and ██████████ by the Paternal Grandparents who had served as ███████████ relative caregivers, despite the AARC recommendation and court approval that the siblings be adopted by the Grandparents.

i. After the termination of Birth Parents rights, blocking contact between ██████████ and his legal brother and sister in law, Rodney Williams, Jr. and Taniyah Williams;

j. Assisting in exerting improper pressure on the Williams Family to coerce them into leaving ██████████ with the system-connected nonrelatives Frains, who would then falsely claim to be fictive kin;

k. Making multiple attempts to internally divert ██████████ from his relative caregivers to the KFF-connected Frains, attempts that included, among other things, foster system staff trying to unlawfully kidnap ██████████ from day care, filing a dependency case to remove ██████████ from his Adoptive Parents/paternal grandparents;

l. Withholding from ██████████ and his adoptive parents and their attorneys, the complete case record KFF has and had a duty to provide pursuant to Fla. Stat. § 39.00145, including all genetics test results generated on any Williams Family members during the dependency case.

95. The wrongful, negligent actions of KFF and its staff caused harm and damages to ██████████ and the continued improper withholding of ██████████ records, wrongly treating him as a second class citizen contrary to law.

96. As a result of KFF's negligence, ██████████ suffered bodily injury and resulting pain and suffering, disability mental anguish, loss of capacity for the enjoyment of life, unnecessary exposure to health

issues that could and should have been rectified if the genetics tests results had been promptly and completely provided, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and the aggravation of a previously existing condition. The losses are either permanent or continuing and ██████████ will suffer the losses in the future.

WHEREFORE Plaintiff ██████████ demands trial by jury of all issues so triable as of right, and entry of judgement against KFF for all damages caused or contributed to by KFF and its staff, plus such further relief as the Court deems appropriate.

### Count II-B: ████████████ Claim against KFF for Tortious Interference with Constitutionally Protected Rights and Familial Relationships

97. As an alternative to Count II-A, acting by and through his Adoptive Parents, Plaintiff ██████████ realleges paragraphs 1 through 67 and further alleges:

98. KFF's handling of ██████████ and ██████████ case was an intentional effort to divert the children from the Birth Parents custody, as was its effort to internally divert ██████████ away from the Birth Parents, using the same known-to be-false statements.

99. KFF's conduct was willful, and wrongly and knowingly invaded the Birth Parents rights to parent ██████████ and ██████████ without government interference, and violated the rights of ██████████ to be left with his Birth Parents in the absence of any evidence of abuse. [That ██████████ had a metabolic medical disorder consistent with her

fractures, is not evidence of any abuse; indeed the dependency judge found no specific evidence of abuse by either parent].

100. KFF"'s misuse of the foster care system and its allowing its staff to abuse the foster system to achieve the internal diversion of children from their families and relatives, and its allowing KFF-connected nonrelative adoption applicants to be identified as "fictive kin" despite the legal impropriety of such an approach, especially where, as here, there were available actual blood relatives and actual family members, clearly indicate KFF's violation of the prohibitions against kidnapping in Florida law, including but not limited to Fla. Stat. § 787.01.

101. KFF breached its obligations and the duties it owed to ███████ ██████ by:

(a) Withholding key evidence about ████████ bone disease and other health issues from the Plaintiff Family members and the dependency court judge [If the withheld information had been provided, there would have been no legal basis for terminating the parental rights of ███████ Birth Parents; ████████ would be living with his Birth Parents, sister ████████ and brother ███████, as a single, family unit that had not been terrorized, harassed and splintered as a result of lead agency KFF and its staff];

(b) Causing the withholding of information about the blatant conflicts of interest inherent in KFF's unreasonable, improper operation of the foster system;

(c) Not placing ████████ with him in a placement with a real relative at the time of the shelter;

(d) Coercing and with implicit and explicit threats convincing ████████ ████████ Adoptive Parents of the need to protect him from internal

diversion from them, by acceding to the shameful, conflict of interest-laden demands of KFF and its staff that, despite the recommendation that ███████ and ██████ both be adopted by the paternal grandparents, the KFF-connected Frains be allowed to "keep" ██████

(e) Convincing its staff and the Department and GAL to keep from the judge the information about the *Santosky v. Kramer,* 455 U.S. 745 (1982) burden of proof needed to terminate parents' rights to raise their children:

(f) Contrary to law, blocking his visitation with his sister ██████ so that he and ██████ would not become further bonded,

(g) KFF staff encouraged and assisted the Department and GAL to file an unfounded, improper motion to remove ██████ in 2018 from his custodial relative paternal grandparent caregivers for the purpose of assisting the KFF unlawful plan to add ██████ to the Frains' collection of improperly internally diverted children;

(h) KFF was involved in the filing of the 2019 dependency petition to try to separate ██████ from his relative caregivers;

(i) KFF improperly allowed the KFF-connected-Frains to improperly interject themselves into a hearing in ██████ case, where they and their attorney tried to bully the dependency court into ordering ██████ to be placed with the Frains while ██ ██████ adoptive parents completed their case plan for reunification with ██████; [During the hearing on November 12, 2019, the Frains and their attorney did not themselves tell the judge about the connection between the Frains and KFF. The Williams Family had obtained the information about the Karl Frain status as a member of the KFF board of directors and as a trustee of the KFF Foundation two days earlier, and, through their then counsel, advised the presiding judge about the blatant conflict of interest, who disallowed the placement, but the Frains' attorney had already filed a notice of appearance and did not withdraw it, which gave him improper access to that case, contrary to law].

(j) KFF abused its fiduciary obligations by encouraging and allowing lead agency personnel to act without any court order to unlawfully remove ███████ from his day care so he could be given to the Defendants;

(k) KFF staff worked with the Department and GAL to use ex parte proceedings, with no notice or opportunity to be heard for the Birth Parents blocking any contact with ███████ even though Rodney, Jr. became a legal sibling of ███████ by the wrongful actions of KFF's wrongful termination of parental rights; and.

(l) KFF allowed and participated in the filing of a 2021 dependency petition to allow the Williams youngest child ███████ to be internally diverted to the KFF-connected Frains for themselves. In so doing, KFF used the known-to-be-false allegations from the 2017 fraudulent petition involving ███████ and ███████ constituting improper interference with the familial associational rights under Florida law, including Fla. Stat. §787.03 and violate the provisions against perjury in official proceedings in Fla. Stat. §§ 837.02, 837.021 and 837.06, among others.

102. As a result of KFF's breaches of duty and wrongful misuse of power and position, and its repeated wrongful interference with ███████ constitutionally protected familial associational rights, ███████ suffered harm, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, interference with and loss of his constitutionally protected associational rights with ███████ and his parents, his right to be free from unlawful interference with his familial relationships, loss of earnings, loss of ability to earn money, and the interference and separation from his Birth Parents in the past, with the damages continuing in the future.

103. As a further result of KFF's wrongful interference, and its multiple attempts to remove ███████ from his Adoptive Parents, KFF caused harm to the parent/child relationship existing between the Adoptive Parents and ███████ and wrongly interfered with the associational rights of ███████ with his brother Rodney, Jr. and sister-in-law Taniyah Williams, and with his sibling ███████

104. As a further result of KFF's wrongful interference, KFF blocked ███████ due process rights of access to the dependency court and continues to try to block ███████ of his rights to his records, causing further harm.

WHEREFORE Plaintiff ███████ demands trial by jury of all issues so triable of right, and demands the entry of judgement against KFF for its part in this awful travesty, and for such further relief as the Court deems appropriate.

### Count III-A: Adoptive Parents Claim against KFF for Negligence against KFF

105. Plaintiffs Charlotte Williams and Rodney Williams, Sr. reallege paragraphs 1 through 67 and further allege:

106. At all times material, Defendant KFF owed the following statutory, contractual, constitutional and common law duties to the Adoptive Parents:

    a. To use reasonable care in the operation of the foster system in north Florida, including the Fourth Circuit;

    b.  To follow state and federal law regarding keeping children removed from parents with their family members;

c.  To keep siblings placed together and, if siblings were separated, from each other, then providing a sufficiently frequent visitation schedule between the children and their relatives that constitutionally protected First Amendment associational bonds were maintained and strengthened;

d. To provide notice of every hearing and staffing to the Adoptive Parents, while they were relative caregivers for ██████ ████████ so that their constitutionally protected Due Process rights were respected, and they would have a reasonable opportunity to be heard;

e. To respect and comply with Florida conflict of interest laws prohibiting the Frains from fostering or adopting children whose cases were being handled by KFF and its staff;

f. To move forward expeditiously to finalize the adoption of ████ ████████ and ████████ following the AARC recommendation and court order directing that Charlotte and Rodney Williams, Sr. adopt both siblings;

g. To promptly provide them copies of all medical and other information required by law relating to both siblings; and

h.  To not assist system-connected persons like the Frains thwart the rights of the siblings and their grandparents, increasing the risk of worse outcomes and harm to children whose cases were not handled in accordance with the law.

107. Defendant KFF breached these duties, by:

a. Withholding essential and material information;

b. Separating the siblings;

c. Interfering with visitation between the siblings and other relatives;

d. Failing to give notice of court hearings and staffings relating to the two children;

e. Failing to disclose, ever, the connections between the Frains and KFF;

f. Failing to disclose, ever, that the Frains were not eligible, or qualified, under Florida law to be allowed to foster either ███ ██████ or ████████;

g. Failing to disclose to the Adoptive Parents how KFF and others involved in operating the foster system were working together unlawfully so as to maximize the Frains being able to get the siblings, like choosing puppies from a shelter or pet store;

h. Blocking the Plaintiffs' right of access to the records of ███ ██████ and ████████;

i. Blocking the Plaintiffs rights, as the Adoptive Parents of ███ ██████, to notice and an opportunity to be heard in every hearing in the dependency case held after ████████ had been placed with them in the Fall of 2017;

j. Withholding the children's records, including all the genetics test results;

k. Assisting the Frains to adopt ████████

l. Having their staff assist the Frains in trying to internally divert ████████ and ██████ to the Frains;

m. Coordinating with others to try to kidnap ████████ from his day care, with no court order, so they could help get ███ ██████ to the Frains;

n. Attempting to remove ████████ from their care, both before and after their adoption of ████████, for the

purpose of helping KFF-connected Frains to get custody of ████████

o. Interfering, without complying with basic due process or the law, in the relationship between them and the Birth Parents;

p. Never implementing a visitation schedule for ████████ with his siblings, including his brother Rodney Williams, Jr and sister in law Taniyah Williams;

q. Treating the Adoptive Parents, ████████ [and the rest of the family[ like second class citizens;

r. Secretly co-opting attorney Elrod, arranging for him to be paid to collaborate with and assist KFF and the Frains, contrary to his obligations to provide proper representation for the Williams Family members.

108. KFF's breaches of its obligations and the law proximately caused or contributed to damage to the Adoptive Parents.

109. Each of the Adoptive Parents suffered damages caused by or contributed to by KFF's negligence, including, but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, loss of their constitutionally protected associational rights with ████████ and other family members, violation of their right to be free from interference with their privacy, the expense of retaining attorneys to protect their rights as well as their entitlement to the complete case records of ████████ loss of earnings, loss of ability to earn money, all of which damages have occurred in the past, continue to be incurred and appear likely to continue into the future.

WHEREFORE Plaintiffs Charlotte Williams and Rodney Williams, Sr. demand the trial by jury of all issues so triable as of right and demand the entry of judgement against KFF for their damages, and such further relief as the Court deems appropriate.

### Count III-B: Claim of Adoptive Parents for Tortious Interference with Constitutionally Protected Rights and Familial Relationships

110. As an alternative to Count III-A, Plaintiff Adoptive Parents reallege paragraphs 1 through 67, and further allege:

111. KFF's handling of ▮▮▮▮▮▮ case was intended to interfere with the constitutionally protected associational and custodial rights of her grandparents/prospective adoptive parents with ▮▮▮▮▮▮

112. KFF's handling of ▮▮▮▮▮▮ case was an attempt to interfere with the Grandparents'/Adoptive Parents' custodial and parental rights with ▮▮▮▮▮▮

113. Between the Fall of 2017 and at least 2019, KFF, through its staff, acted willfully and knowingly invaded the Grandparents' and Prospective Adoptive Parents' rights relative to ▮▮▮▮▮▮ with the purpose of ignoring the laws to provide the KFF-connected Frains with custody of ▮▮▮▮▮▮

114. Between the Fall of 2017 and continuing through at least January 2021, KFF, through its staff, knowingly invaded the Adoptive Parents' rights to ▮▮▮▮▮▮

115. KFF's conduct was willful, and wrongfully and knowingly invaded the Grandparents and Adoptive Parents' rights relative to █████████ and █████████ with the purpose of improper purpose of ignoring the laws, to provide the KFF-connected Frains with custody of █████████ and █████████ while knowingly interfering with the constitutionally protected familial associational rights of Charlotte Williams and Rodney Williams, Sr. with █████████ and █████ █████████

116. At all times material, KFF's tortious, repetitive, continuing misconduct constituted improper interference with the Plaintiff's custody rights under Florida law, including but not limited to Fla. Stat. §787.03, and violated the provisions against perjury in official proceedings in Fla. Stat. §§. 837.02, 837.021 and 837.06, among others.

117. As a result of Defendant KFF's breaches of duty and wrongful misuses of power and position, and their repeated wrongful interference with the Plaintiffs' constitutionally protected familial associational rights, each of the Plaintiff Adoptive Parents [whether in the capacity of prospective adoptive parent as to █████████ and █████████ prior to April 2019, or, in as to █████████ after April 2019, actual Adoptive Parents] suffered harm, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, interference and loss of their constitutionally protected associational rights with █████████ and █████████ the right to be

free from unlawful interference with their familial relationships, loss of earnings, loss of ability to earn money, and the interference and separation from ███████ and interference, separation and loss of ███████ from the family in the past, with the damages continuing in the future.

118. As a further result of Defendant KFF's wrongful interference and its multiple attempts to remove ███████ from his custodial relatives and Adoptive Parents, Defendant KFF caused harm to the parent/child relationship existing between the Adoptive Parents and their legal children, and wrongly interfered with the associational rights ███████ with his legal brother Rodney, Jr. and sister-in-law Taniyah Williams.

WHEREFORE, Plaintiffs Charlotte Williams and Rodney Williams, Sr. demand trial by jury of all issues so triable as of right, and demand judgement against KFF for their damages and such further relief as the Court deems appropriate.

### Count III-C: Claim of Adoptive Parents and ███████ Claims against KFF for Intentional Infliction of Emotional Distress.

119. As an alternative to the other counts relating to the Adoptive Parents and ███████ Plaintiff Adoptive Parents, on behalf of themselves and ███████ reallege paragraphs 1 through 67 and further allege:

120. At all times material, KFF's conduct in implementing the internal diversion of ███████ and █████████ from the prospective and actual Adoptive Parents was intentional or reckless.

121. At all times material, KFF's conduct was outrageous.

122. At all times material, KFF's improper conduct caused severe emotional distress to each of the prospective adoptive parents beginning August 2017 through at least mid-2019 as to the improper internal diversion regarding ████████.

123. At all times material, KFF's improper conduct caused severe emotional distress to each of the Adoptive Parents and █████████ beginning August 2017 through at least 2021 as to multiple attempted internal diversions of ███████ to the KFF-connected Frains.

124. At all times material, Plaintiff Adoptive Parents and █████████ sustained severe emotional distress as a result of KFF's year long unlawfully intrusive, internally diverting, discriminatory, rights-blocking conduct.

125. At all times material, KFF has violated the clear legal right of ████████ and his Adoptive Parents to █████████ complete case records pursuant to Fla. Stat. §§ 39,00145, 39,0132 and Florida's constitutional and statutory right to public records, trying to keep concealed the wrongful acts of KFF and its colleagues, and withheld notice of hearings and staffings, and blocked these Plaintiffs from hearings to which they were entitled to access.

125   Each of the Plaintiff Adoptive Parents suffered damages caused by KFF's breaches of duty, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, severe emotional distress, loss of capacity for the enjoyment of life, loss of constitutionally protected associational rights with their grandchildren █████████ and █████████ the right to be free from unlawful interference with their familial relationships, loss of earning, loss of ability to earn money, the improper blocking of their access to █████████ complete case records, and the loss of █████████ and █████████ from the family in the past, with the wrongful separations and intrusions on constitutionally and legally protected expected to continue into the future.

Plaintiff █████████ suffered damages caused by KFF's breaches of duty and wrongful acts, including but not limited to bodily injury and resulting pain and suffering, disability, mental anguish, severe emotional distress, loss of capacity for the enjoyment of life, loss of and interference with his constitutionally protected associational rights with his sister █████████ his brother █████████ and his legal brother and sister-in-law Rodney, Jr. Williams and Taniyah Williams, unlawfully blocking █████████ right to his complete case records  damage to his right to be free from unlawful interference with his familial relationships and other constitutionally and legally protected rights, with the damages still ongoing and continuing into the future.

WHEREFORE Plaintiff Adoptive Parents and ██████ demand trial by jury of all issues so triable as of right and further demand judgement against KFF and such further relief as the Court deems appropriate.

Dated this 3d day of October, 2022.

| | |
|---|---|
| Community Law for Families and Children, PLLC VALENTINA VILLALOBOS, Esq. Fl. Bar No. 100426 OCTAVIA BROWN, Esq. Fla. Bar No. 0011778 Co-counsel for Plaintiffs 3104 North Armenia Ave., Suite 2 Tampa, Florida 33607 813.822.3522 valentina.villalobos@community-lawyer.com octavia.brown@community-lawyer.com | KAREN GIEVERS, Esq. Attorney for Plaintiffs Fla. Bar No. 262005 P. O. Box 16459 Tallahassee Florida 32317 850.570.0425 kgievers@karengievers.com |

*/s/Karen Gievers*

and

*/s/ Aaron Rapier*
**Aaron Rapier, Esq.,**
Rapier Law Firm
Illinois Bar No. 6270472
1770 Park Street, Suite 200
Napierville, Illinois 60563
PH: 630.853.9224
arapier@rapierlawfirm.com

*Trial Attorneys for Plaintiffs*

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL
CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA

Case No. 2022 CA 003522
Division CV-C

**The Williams Family, etc. et al.,**

Plaintiffs,

v.

**Kids First of Florida, Inc.,**

Defendants.

## Certificate of Service of Amended Complaint

The undersigned hereby certifies that a true and correct copy
of the amended complaint efiled on October 4, 2022 was served
electronically on all counsel of record, including defense counsel
Joshua Walker by the Clerk at the time the document was
processed through the Official Portal.

Dated this 4th day of October, 2022.

/s/ Karen Gievers
KAREN GIEVERS, Esq.
P. O. Box 16459
Tallahassee, Florida 32317
850.570.0425
kgievers@karengievers.com
Florida Bar Number 262005

And

/s/ Octavia O. Brown
Octavia O. Brown, Esq.
FL Bar No.: 0011778
/s/ Valentina Villalobos
Valentina Villalobos, Esq.

FL Bar No.: 100426
Community Law for Families and Children, PLLC
3104 North Armenia Ave., STE 2
Tampa, Florida 33607
PH: 813-822-3522
FAX: 863-520-8228
Octavia.brown@community-lawyer.com
Valentina.villalobos@community-lawyer.com
Co-Counsel for Plaintiffs

and

/s/ Aaron Rapier
**Aaron Rapier, Esq.,**
Rapier Law Firm
Illinois Bar No. 6270472
1770 Park Street, Suite 200
Napierville, Illinois 60563
PH: 630.853.9224
arapier@rapierlawfirm.com

*Trial Attorneys for Plaintiffs*

## Certificate of Service

    I hereby certify that a true and correct copy of this certificate will be forwarded to all pertinent counsel of record, including attorney Joshua Walker for the Defendant, by electronic mail sent by the Clerk when this is filed with the Official EFiling portal.

*/s/ Karen Gievers*

KAREN GIEVERS